[S. F. No. 12179.   In Bank.—August 9, 1926.]

C. J. KUBACH COMPANY (a Corporation), Petitioner, v. HUGH J. McGUIRE, as President of the Board of Public Works of the City of Los Angeles, State of California, Respondent.

[1] MUNICIPAL CORPORATIONS — CHARTERS — CONSTITUTION.—Under the constitution, the charter of a city is not only the organic law of the city, but it is also a law of the state within the constitutional limitations.

[2] ID.—STATUTORY CONSTRUCTION—STATE AND ITS AGENCIES.—A charter of a city, being an enactment in the exercise of the law-making power of the state, is subject to the recognized rules of statutory construction, and in the interpretation of a legislative enactment it is the general rule that the state and its agencies are not bound by general words limiting the rights and interests of its citizens unless such public authorities be included within the limitation expressly or by necessary implication.

[3] ID.—LOS ANGELES CHARTER—LIMITATION OF HEIGHT OF BUILDINGS —INAPPLICABILITY TO CITY.—The provision of the charter of the city of Los Angeles prohibiting the erection of a building or structure, within a certain area, of a height exceeding one hundred and fifty feet, was not intended to restrict the city in the construction of its public buildings.

(1) 28 Cyc., p. 266, n. 14 New.   (2) 28 Cyc., p. 266, n. 14 New; 36 Cyc., p. 1171, n. 37, 38, 39.   (3) 28 Cyc., p. 859, n. 92.

APPLICATION for a Writ of Mandate to compel the respondent to sign a certain contract.   Writ granted.

The facts are stated in the opinion of the court.

Richard J. O. Culver for Petitioner.

Jess E. Stephens, City Attorney, and Lucius P. Green, Assistant City Attorney, for Respondent.

SHENK, J.—At a special election held in 1923 in the city of Los Angeles the electors thereof authorized the issuance of bonds in the sum of $5,000,000 for the construction

1.   See 18 Cal. Jur. 764.
2.   See 23 Cal. Jur. 625; 25 R. C. L. 784.

of a new city hall. By a vote of more than two to one said electors have expressed a preference for the construction of a new building on a plot of ground 400 feet wide and 800 feet long on North Main Street between First and Temple Streets, and to consist of a twenty-eight story structure approximately 400 feet in height. The main portion of the building as designed and approved by the voters will, if constructed, be 200 feet wide by 400 feet long to the height of four stories, then 150 feet wide by 250 feet long for an additional six stories, and the balance of the building will be in the shape of a tower 110 feet square.

The city has expended in excess of two and one-half million dollars for the acquisition of the land upon which to construct the building as proposed. The necessary excavations have been made and the foundations have been constructed. Contracts have been let for the steel construction and other contracts, not included within the general contract, hereinafter mentioned, have been awarded. After proceedings duly taken pursuant to the requirements of the city charter a contract was awarded to the petitioner for furnishing all necessary labor, materials, equipment and appliances for the construction of that portion of the new building embraced within the plans and specifications for the general contract for the sum of $2,852,700. The contract was duly prepared and by proper resolution the board of public works directed its president, the respondent herein, to sign the same on behalf of said city as provided by the charter. The respondent has refused to sign the contract on the ground that it calls for the construction of a building in excess of 150 feet in height and therefore in alleged violation of section 3 (11) (a) of the charter, which provides:

"No building, structure or any part thereof of a height exceeding one hundred fifty feet shall be erected within that portion of the City described as follows, or within one hundred fifty feet of the exterior boundaries of said district:

"Bounded on the north by Temple Street, and the easterly prolongation thereof; on the east by San Pedro Street, and the northerly prolongation thereof; on the south by Pico Street and on the west by Figueroa Street."

This proceeding in *mandamus* is to compel the respondent to sign said contract notwithstanding his predilections as to the alleged violation of the provision of the charter above quoted. The application for a peremptory writ has been submitted on a general demurrer to the petition setting forth generally the foregoing facts.

It is the contention of respondent that the said charter provision is applicable alike to the city in the construction of its public buildings as to the inhabitants of said city in private enterprises. It is the contention of the petitioner that the city is not bound unless the language of the limitation is clear and unmistakable, to the effect that the city itself should be so bound, and that such language does not here appear.

We are of the opinion that the contention of the petitioner should be sustained. [1] Under the constitution the charter of the city is not only the organic law of the city but it is also a law of the state within the constitutional limitations (*Ex parte Sparks,* 120 Cal. 395, 399 [52 Pac. 715]; *Dalton* v. *Lelande,* 22 Cal. App. 481, 487 [135 Pac. 54]; *Stern* v. *City Council of Berkeley,* 25 Cal. App. 685, 688 [145 Pac. 167].) [2] Being an enactment in the exercise of the law-making power of the state it is subject to the recognized rules of statutory construction. In the interpretation of a legislative enactment it is the general rule that the state and its agencies are not bound by general words limiting the rights and interests of its citizens unless such public authorities be included within the limitation expressly or by necessary implication. (*Marin Mutual Water Dist.* v. *Chenu,* 188 Cal. 734 [207 Pac. 251]; *Balthasar* v. *Pacific Elec. Ry. Co.,* 187 Cal. 302 [19 A. L. R. 452, 202 Pac. 37]; *Mayrhofer* v. *Board of Education,* 89 Cal. 110 [23 Am. St. Rep. 451, 26 Pac. 646]; *Whittaker* v. *County of Tuolumne,* 96 Cal. 100 [30 Pac. 1016].) [3] The rules laid down in the foregoing cases would seem to apply to the city in its present situation, and to justify the conclusion that it was not intended that the city should be so restricted in the construction of its public buildings. This conclusion is fortified by the showing, also made by the petition herein, that since the adoption of said charter provision a public library building and a new hall of

justice, both in excess of 150 feet in height, have been constructed within said district without objection. While neither the overwhelming vote in favor of a new city hall of this particular height and design at the location mentioned, nor the construction of other public buildings within said district in excess of the general charter limitation, is conclusive as to the scope of said provision, nevertheless those facts shed some light on the question as to whether it was intended by the people of the city and by the legislature in adopting and approving the charter provision that the city itself should be subject to the height limitation prescribed in said section 3. We think there is not in that section such a clear and definite expression of the intention so to limit the city in the construction of its public buildings as would remove the provision from the operation of the general rule contended for by the petitioner.

Let a peremptory writ issue requiring the respondent to sign said contract as directed by the board of public works and as prayed for herein.

Seawell, J., Richards, J., Curtis, J., Tyler, J., *pro tem.*, and Waste, C. J., concurred.