[Civ. No. 3316.   Third Appellate District.—May 6, 1927.]

## PRENTICE H. BOTTOMS, Petitioner, v. SUPERIOR COURT OF MADERA COUNTY et al., Respondents.

[1] CONTINUANCE—ATTORNEY AT LAW — ATTENDANCE AT SESSION OF LEGISLATURE—MANDATORY PROVISIONS OF SECTION 1054, CODE OF CIVIL PROCEDURE.—Section 1054 of the Code of Civil Procedure, providing for an extension of time where the attorney for the party seeking the extension is actually engaged in attendance upon a session of the legislature, is mandatory, and not a matter of discretion.

[2] ID.—EMINENT DOMAIN—CONSTRUCTION OF CODE.—Section 1054 of the Code of Civil Procedure, permitting an extension of time in proceedings until after final adjournment of the legislature where the attorney of record of the party applying for extension is engaged in attendance at a legislative session, applies in special eminent domain proceedings under sections 1237 to 1263 of the Code of Civil Procedure, especially sections 1244 and 1264, notwithstanding the requirements of section 1264 that such actions shall be quickly heard and determined.

[3] ID. — MEMBER OF LEGISLATURE BECOMING ATTORNEY OF RECORD AFTER BEGINNING OF LEGISLATIVE SESSION—RIGHT TO HAVE TIME FOR ANSWER EXTENDED.—Where the sole attorney of record of defendant in eminent domain proceedings was a member of the legislature attending a session, the court was required, under section 1054 of the Code of Civil Procedure, on application, to extend time for answer until thirty days after adjournment of the legislature, notwithstanding the fact that said member became the attorney of record after the beginning of the legislative session.

[4] CERTIORARI—ORDER VACATING ORDER EXTENDING TIME TO FILE ANSWER—APPEAL.—An order of court vacating an order extending time to answer under section 1054 of the Code of Civil Procedure is reviewable by *certiorari*, section 963 not being applicable.

(1) 13 **C. J.,** p. 146, n. 10.   (3) 31 **Cyc.,** p. 132, n. 43.   (4) 11 **C. J.,** p. 116, n. 2.

APPLICATION for Certiorari to review an order of the Superior Court of Madera County, and Stanley Murray, Judge thereof, vacating an order extending time to file answer in a proceeding in eminent domain, and denying a

3.  See 5 **Cal. Jur.** 983.

motion to intervene.   Motion to intervene denied; vacating order annulled.

The facts are stated in the opinion of the court.

Robert L. McWilliams for Petitioner.

Edward F. Treadwell for Respondents.

HART, J.—This is an application for a writ of *certiorari.* From the petition for the writ it appears that an action was commenced in the respondent court on the 30th of December, 1926, by the Southern California Edison Company against the petitioner and others for the purpose of condemning certain water rights of the latter; that the Honorable Raymond W. Williamson, an attorney at law in the city of San Francisco, was retained by petitioner to appear in and defend said action for petitioner; that said Williamson, at the general election held throughout the state on the fifth day of November, 1926, was duly elected as a member of the assembly of the legislature of the state of California, to be convened, and which did convene, at the city of Sacramento in its regular biennial session on the first Monday after the first day of January, 1927; that, on March 14, 1927, while the legislature was in session, and said Williamson was then in attendance at said session and then actually engaged in the performance of his duties as a member thereof and still was the regularly retained attorney for the petitioner in the action above named, the latter applied to the respondent court for an extension of time within which to file his answer in said action and to take any other proceeding which might be necessary therein; that said application was in writing and supported by the affidavit of the petitioner; that, on said fourteenth day of March, after a consideration of the application, the court made an order, finding that said Williamson was then a member of the legislature and in attendance thereon and actually engaged in performing his duties as such, and extending the time within which the petitioner might file an answer in the action or take any other steps which the exigencies of the case might require on the part of petitioner, until the legislature adjourned *sine die* and for thirty days thereafter. (Code

Civ. Proc., sec. 1054.)    It further appears from the petition for the writ that, on the twenty-eighth day of March, 1927, and while the legislature was yet in session and the petitioner still actually engaged in the performance of his duties as a member thereof, the respondent court, on motion of the plaintiff in said action, made an order vacating and setting aside the order extending petitioner's time to answer the complaint, etc., in said action until the final adjournment of the legislature and for thirty days after such adjournment.

The affidavit filed by the petitioner in support of his application for an extension of the time to take any steps or proceeding with reference to the complaint in said action, as above explained, until after the adjournment of the legislature *sine die,* stated that said Williamson "is, and ever since the filing of the complaint herein (the action above named) has been, the only attorney for the defendant, Prentice H. Bottoms (petitioner herein) in said above action"; that said Williamson, on the second day of February, 1927, as attorney for petitioner, filed in said action a motion to strike out parts of the complaint filed therein, and also a demurrer, upon both general and special grounds, to said complaint; that thereafter, and in the month of February, 1927, said Williamson argued said motion and said demurrer, and thereafter filed points and authorities in support of the motion and the demurrer; that, on the twenty-sixth day of February, 1927, respondent made orders denying the motion to strike out parts of the complaint and overruling said demurrer, and gave defendant (petitioner) ten days in which to answer said complaint; that plaintiff in said action, on the twenty-sixth day of February, 1927, served said Williamson with notice of the action of respondent court on said motion and said demurrer; that thereafter the said court allowed petitioner ten days' additional time in which to answer said complaint or prepare a bill of exceptions to the orders denying the motion to strike and overruling the demurrer.    The affidavit proceeds with a statement of the fact that the legislature was then in session and the further fact that Williamson was a member thereof, representing the twenty-sixth assembly district in San Francisco, and then actually performing his duties as assemblyman; that the answer necessary to be prepared and filed in said action will involve "many intricate questions of law and fact," and

will require, in its preparation, the undivided attention of said Williamson "for a considerable time," and that the time so required "cannot be given thereto by said . . . Williamson while he is attending to and giving necessary attention to his duties as said assemblyman." The affidavit further stated that petitioner had related the facts of said cause to said Williamson, "and affiant has been by said Williamson advised that he has a good and meritorious defense to said action on the merits," and that affiant "verily" so believes.

The plaintiff made no counter-showing by affidavit or otherwise, except in so far as any arguments which might have been made in resistance to the application may be so considered.

The submission here is on the petition for the writ and the return by the respondents, certifying the record and all the pertinent proceedings in the action out of which the present controversy arises.

As hereinabove intimated, the petitioner claims the right to an extension of the time in which to answer the complaint or to take further proceedings until thirty days after the final adjournment of the legislature by virtue of the provisions of section 1054 of the Code of Civil Procedure, and this because, as is made to appear by the record before us, he is the only attorney he has employed or at any time retained or employed since the filing of the complaint in condemnation in the action referred to and is and has been, ever since said action was instituted, a duly elected and acting member of the legislature of the state of California. That section reads as follows: "When an act to be done, as provided in this code, relates to the pleadings in the action, or the undertakings to be filed, or the justifications of sureties, or the preparation of bills of exceptions, or of amendments thereto, or to the service of notices other than of appeal, the time allowed by this code, unless otherwise expressly provided, may be extended, upon good cause shown, by the judge of the superior court in and for the county in which the action is pending, or by the judge who presided at the trial of said action; but such extension shall not exceed thirty days, without the consent of the adverse party; except that when it appears to the judge to whom said application is made, that the attorney of record for the party applying for said extension is actually engaged in attendance upon a

session of the legislature of this state, as a member thereof; in which case it shall be the duty of said judge to extend said time until said session of the legislature adjourns, and thirty days thereafter."

[1] The petitioner contends: That the above section, in so far as it applies to attorneys at law that are members of the legislature and are in attendance upon its sessions, is clearly mandatory, and, therefore, where it is made to appear in a particular action that the only attorney a party thereto has retained and employed to represent him in the litigation involved in said action is a duly elected, qualified, and acting member of the legislature and, while the action is still pending, is in attendance at the session thereof and actually engaged in the performance of his duties as such, there is but one course which is open to the court before which such action is pending, and that is to grant an application, if one be made, for a postponement of further proceedings therein for the period of time prescribed in said section. We agree to that view of the section and that, under the provision thereof, it is not a matter of discretion with the court, where the facts support such application, or where in a particular case considerations do not exist or are not satisfactorily shown which would justify a denial of the application, as to whether it will order a postponement of further proceedings in the action until after the expiration of the full time so prescribed, but that it is the mandatory duty of the court to grant such postponement. It follows that points 1, 2, 5, and 6 urged here by the respondents have no application to the instant case. These points, stating them in the order in which they are presented in the briefs of respondents, are: 1 and 2. That section 1054 (Code Civ. Proc.) has no application to a case where the time (for answering after a demurrer is overruled) is not fixed by law, but rests in the discretion of the court, citing *Vestal* v. *Young,* 147 Cal. 715 [82 Pac. 381], and other cases; 5. "This statutory provision should be strictly construed"; 6. That the superior court has jurisdiction to set aside an order made by it. The other points advanced by respondents are: 1. That the provision of section 1054 of the Code of Civil Procedure as to members of the legislature does not apply to a special proceeding such as an eminent domain proceeding, citing section 1264 of the Code of Civil Pro-

cedure; *Santa Rosa* v. *Fountain Water Co.,* 138 Cal. 581 [71 Pac. 1123, 1136]; *Mayrhofer* v. *Board of Education,* 89 Cal. 110 [23 Am. St. Rep. 451, 26 Pac. 646], and *Kubach Co.* v. *McGuire,* 199 Cal. 215 [248 Pac. 676]; 2. "That section 1054 regarding members of the legislature has no application to a case where the member became attorney of record after the beginning of the legislative session," citing *People* v. *Goldenson,* 76 Cal. 328, 342 [19 Pac. 161], and *Stockley* v. *Goodwin,* 78 Ill. 127; 3. That "the setting aside of the order is at most error and not necessarily even reversible error, and error cannot be corrected by a writ of review," citing *Chicago Public Stock Exchange* v. *McClaughry,* 148 Ill. 372 [36 N. E. 88]. These propositions will be considered in the order in which they are thus stated.

1. The purpose of the provision of section 1054 of the Code of Civil Procedure is obvious. It will readily be conceded that there is no activity connected with and essential to the preservation and maintenance of the social fabric of greater importance than that of the functioning of the legislative department of a state. In exercising and administering that branch of the sovereign powers of a state that is appropriated to it by the people, in a government such as ours, in which the sovereign powers are divided into and assigned to three different, distinct, and independent departments, the legislature is required to deal with the most sacred of human rights—rights which directly affect the life, the liberty and the property of the citizen. The members of that body, therefore, must give constant and uninterrupted attention to their duties as such while it is in session lest there be either advertently or inadvertently bad legislation put over or good laws repealed, the effect of which would necessarily be to work, for the time, irreparable damage to the state. But these propositions are well understood and their soundness will be conceded, since it cannot possibly be doubted that the members of the legislature, particularly such members as may belong to the legal profession and engaged actively in the practice thereof, should be relieved by the law from concerning themselves with extraneous matters or interests not pertaining to their legislative duties while they are in attendance on sessions of the legislature and actually prosecuting their duties as such. On the other hand, the suggestions may be ventured, significant in the

present connection, that a practicing lawyer deals with a science involving the most abstruse learning, in its remedial and procedural as well as its substantive branch, and in conserving or preserving, or protecting or defending the rights of his clients when such rights are questioned in the judicial tribunals, the demand for his undivided attention to those causes is as necessary or imperative as is the demand upon him for like attention while he is engaged in performing the duties of a member of the legislature. It must be plainly apparent to every person of common intelligence that in any attempt upon his part to attend to his duties as a legislator and at the same time attend to his professional engagements, he could give neither to the people whom he represents, nor to his clients, while the legislative body of which he is a member is in session, the capable service which he owes to both and which they have the right to expect from him. These considerations plainly disclose the motives of and also exhibit the wisdom displayed by the legislature in inserting in section 1054 of the Code of Civil Procedure the provision, the effect of which is to relieve lawyers serving as members of that body from attending to certain of their professional duties during its session, so that they may not be diverted from the proper performance of the solemn duties they owe to the people as legislators and, at the same time, that the causes of their clients pending in the courts contemporaneously with the sessions of the legislature may be given the benefit of the scientific attention and supervision which they require and which only a lawyer learned in the principles of the law can properly give to legal problems.

[2] These considerations are suggested as one of the answers to the proposition of counsel for the respondents that the provision of section 1054 of the Code of Civil Procedure regarding lawyers that are members of the legislature does not apply to proceedings authorized and prescribed by sections 1237 to 1263, inclusive, of the same code for invoking and applying in any appropriate case the right of eminent domain. But section 1054, considered in connection with certain other sections, clearly shows that it was intended to apply in any case, whether the proceeding involved is technically an action at law or a suit in equity or a "special proceeding," where "pleadings" are essential to the institution and maintenance thereof. Obviously, a proceeding in

eminent domain could acquire no standing in a court where the grounds upon which it was sought to exercise that right were not stated in some formal manner. Section 1244 of the Code of Civil Procedure, though, clearly settles that matter. That section specifically points out what the "complaint" in a proceeding in eminent domain shall contain to state a cause of action in such cases. And section 1262 of said code, which relates to eminent domain proceedings, declares that, "except as otherwise provided in this title, the *rules of pleading and practice* in civil actions now in force in this state are applicable to the proceedings mentioned in this title and constitute the rules of practice therein." Lastly, in this immediate connection, it may be observed that no logical argument can be advanced supporting the proposition that the reason for the rule declared in section 1054 regarding attorneys that are members of the legislature is less pertinent or applicable to proceedings or actions looking to the exercise of the right, under the doctrine of eminent domain, to take private property for a public use than to any of the common or usual actions at law or suits in equity.

There is absolutely nothing in the language of section 1264 of the Code of Civil Procedure (cited by respondents) which lends support to the position of counsel for respondents that section 1054 has no application to actions or proceedings in eminent domain. That section merely provides that in all actions brought to enforce the right of eminent domain, the same shall, by any court in which they are instituted, be given preference over all other civil actions therein, in the matter of setting such actions for hearing or trial, and in hearing the same, "to the end that all such actions shall be quickly heard and determined." Of course, it is eminently proper that the legislature should require that actions in such cases, which involve the proposition of taking private property for a public use against the consent of the owner, should be brought to trial and determined with a greater degree of alacrity than is the case in the common run of civil actions, for the obvious reason that, so long as such actions are pending and undisposed of, the owner of the property sought thus to be condemned or taken from its owner is himself practically deprived of the right to use or utilize it. What section 1264 really means is, not that the

defendant in such case shall be forced to such haste in the preparation of his defense as would preclude him from making full and proper preparation therefor, both as to his pleading and proof, or that he shall be deprived of the right to take any step in its preparation which under the law is common in its application to all actions or any proceeding in courts which call for the determination of an ultimate issue, but that, after issue has been joined therein, such action shall be brought to trial with such promptitude as will facilitate the earliest final disposition thereof consistent with a due regard to all the rights of all the parties thereto, and to that end it shall, in the matter of setting the same for trial and in the trial thereof, be given preference over any other civil action pending at the same time.

The cases cited by the respondents on the point now under review are the following: *Mayrhofer* v. *Board of Education,* 89 Cal. 110 [23 Am. St. Rep. 451, 26 Pac. 646]; *Santa Rosa* v. *Fountain Water Co.,* 138 Cal. 579 [71 Pac. 1123, 1136]; *Kubach Co.* v. *McGuire,* 199 Cal. 215 [248 Pac. 676]. These cases are not in point. The first named case was one for the foreclosure of a mechanic's lien on a public schoolhouse. The respondent (board of education) rested its case upon the proposition that public buildings were not subject to the liens of materialmen and mechanics for material used therein and labor bestowed thereon. The appellant urged that public buildings were "included both in the word 'property,' used in the Constitution, and in the phrase 'any building,' used in the section of the code, allowing such liens on privately owned buildings." The supreme court, referring to appellant's contention, said: "But this ignores the rule of statutory construction, that the state is not bound by general words in a statute, which would operate to trench upon its sovereign rights, injuriously affect its capacity to perform its functions, or establish a right of action against it."

*Santa Rosa* v. *Fountain Water Co.* involved an action to condemn for public use certain property. A motion for a change of the place of trial from Sonoma County to the city and county of San Francisco was made and denied, and an appeal from the order denying the motion taken. The ground of the motion was that the residence of the defendant being in the city of San Francisco, section 395 of the Code of Civil Procedure entitled it as of right to a change

of the place of trial to that city and county, said section providing that, in certain actions, the place of trial shall be in the county "in which the defendants, or some of them, reside." The supreme court, holding that the denial of the motion was proper, said that section 1243 of the Code of Civil Procedure establishing the territorial jurisdiction in eminent domain actions laid down the only and exclusive rule as to the venue of such actions, and that section 395, therefore, had no application thereto.

The case of *Kubach Co.* v. *McGuire* involved the question whether the authorization by a vote of the voters of the city of Los Angeles for a bond issue to secure money to finance the erection of a new city hall of twenty-eight stories, or 400 feet in height, in that city, was in conflict with a provision of the city charter of that municipality prohibiting the erection of a building within the zone within which the towering structure was proposed to be constructed exceeding 150 feet in height. In holding the proposal was in no way offensive to the charter provision referred to, the court, through Mr. Justice Shenk, speaking of said charter, among other things, said: "Under the Constitution, the charter of the city is not only the organic law of the city, but it is also a law of the state within the constitutional limitations (*Ex parte Sparks,* 120 Cal. 395, 399 [52 Pac. 715]; *Dalton* v. *Lelande,* 22 Cal. App. 481, 487 [135 Pac. 54]; *Stern* v. *City Council of Berkeley,* 25 Cal. App. 685, 688 [145 Pac. 167]). Being an enactment in the exercise of the law-making power of the state, it is subject to the recognized rules of statutory construction. In the interpretation of a legislative enactment it is the general rule that the state and its agencies are not bound by general words limiting the rights and interests of its citizens unless such public authorities be included within the limitation expressly or by necessary implication. (*Marin Municipal Water Dist.* v. *Chenu,* 188 Cal. 734 [207 Pac. 251]; *Balthasar* v. *Pacific Elec. Ry. Co.,* 187 Cal. 302 [19 A. L. R. 452, 202 Pac. 37]; *Mayrhofer* v. *Board of Education,* 89 Cal. 110 [23 Am. St. Rep. 451, 26 Pac. 646]; *Wittaker* v. *County of Tuolumne,* 96 Cal. 100 [30 Pac. 1016].)"

It is readily to be noted that the principles discussed in the above cases and as applied therein afford no support to the position of the respondents here. We will not take

the trouble of explaining wherein, according to our view, the doctrines of those cases have no relevancy to the point we are discussing further than to say that, while the right of eminent domain is an attribute of sovereignty and solely under the control of the state, and while, furthermore, those persons upon whom the state has deemed it proper to confer the exercise of that power for certain designated purposes, when exercising the power, are, at least theoretically, agents of the state, the people through their constitution, in view of the fact that, to invoke that power, there must be a judicial adjudication of the question of use, necessity, and compensation, have clothed the legislature with a broad discretion in determining the procedure to be followed in such cases. In exercising this power, the legislature has, as we have seen, provided that ''except as otherwise provided in this title (title dealing with the right of eminent domain), the rules of pleading and *practice* in civil actions now in force in this state are applicable to the proceedings in this title, and constitute the rules of pleading and *practice* therein.'' This provision is broad enough to include, as applicable to cases of this character, the provisions of section 1054, and there is not, under the title relative to ''eminent domain,'' any provision establishing a different rule from that established by the section just named. Obviously, the case here is not of that class of cases involving the state or any of its mandatories to which the administration of certain of the state sovereign powers is committed and as to which, to bring them within the ordinary rules regulating the reciprocal obligations and duties owing from one to another, there must be definitely expressed authority therefor by the state itself. In other words, the case here does not fall within the rule that the state or its agencies in such matters are not ''bound by general words limiting the rights and interests of its citizens unless such public authorities be included within the limitation expressly or by necessary implication.'' (*Kubach Co.* v. *McGuire, supra.*)

[3] 2. The contention that section 1054, relating to attorneys that are members of the legislature, ''has no application to a case where the member became attorney of record after the beginning of the legislative session,'' involves the point next to be considered. Counsel for respondents cite *People*

v. *Goldenson,* 76 Cal. 328, 342, 19 Pac. 161], and *Stockley*
v. *Goodwin,* 78 Ill. 127, as supporting this contention.    Those
cases appear to support the respondents' position upon that
proposition, although we are frank to say that we can
perceive no logical reason for holding, as an abstract prop-
osition, that section 1054 should not apply to a case where
the attorney is employed after the session of the legisla-
ture of which he is a member has commenced, as well to
the case where he has been employed before the legislative
session has begun.  Particularly should this be held to
be the rule in this state, in which our legislative sessions
are divided into two periods, since, to follow the rule laid
down in the cases named, might, in many conceivable in-
stances, preclude an attorney at law from accepting em-
ployment in cases about to be transmuted into actions
in the courts pending the recess period of the legislature,
or, more important still, might prevent an attorney regu-
larly employed for many years as the legal adviser of an
individual, whose general business he is thoroughly familiar
with, from attending to the preliminaries of an action
brought in the courts while the legislature is in session
against such client and forcing the latter to employ an
attorney not at all familiar with the legal phases of his
business affairs.  Moreover, it is known as a matter of
common notoriety that in the last two or three decades
the tendency with members of the legal profession has been,
so that now it is pretty generally the course adopted by
lawyers, to specialize in their practice in particular branches
of the law, as, for instance, many devoting themselves in
the practice exclusively to corporation law, others to what
may be termed ''water law,'' and so on through the various
ramifications or branches of the vast body of the science
of jurisprudence.  The law relating to water rights, when
invoked in the courts, always develops intricate legal prob-
lems, and actions at law or suits in equity arising there-
under demand, for their proper presentation in the courts,
legal ability of the highest order—lawyers not only pro-
foundly learned in the general principles of the law, but
who have made a special study of that branch thereof and
have had years of experience in applying its principles to
concrete cases.  These observations are advanced to show
that a litigant should be entitled to call to his aid in a case

which involves questions of property rights of transcendent importance, the lawyer or lawyers in whom he prefers to confide the care of undertakings of such tremendous moment to him. It is to be conceded, however, that cases may arise in which section 1054, in so far as it relates to lawyers that are members of the legislature, should not be given application. If it be shown that the party to the action claiming the benefit of that provision of said section has other attorneys of record in the case capable of managing it in court, or that some attorney, a member of the legislature, had been employed for no other purpose than to secure to a party the benefit of the provision in question from sinister or improper motives, then, in either such cases, particularly in the last suggested, a continuance should not be granted. In this case, so far as the record advises us, the defendant at no time before or at the time the action was commenced had any other attorney to represent him in the action out of which this proceeding grows than said Williamson. On the contrary, the uncontradicted affidavit of the defendant declares that Raymond D. Williamson is the only attorney that he has had in said action since the commencement thereof. While the language of the affidavit, in this particular, may not be as direct or explicit as it should be and is always desirable in a showing such as should be made on a motion for a postponement of the trial of a cause or other like motion, it is certain that from the affidavit it cannot be assumed or inferred that he had at any time at and after the time the action was begun any other attorney. So far as this record shows, Williamson might be and have been before the commencement of the action defendant's regularly retained attorney. The complaint in the action, as shown, was filed on the thirtieth day of December, 1926. On February 2, 1927, the legislature being in recess, Williamson filed a demurrer to the complaint and a motion to strike out certain parts thereof, and later in that month argued the demurrer and motion, the same being, as seen, overruled and denied. The return (the orders of respondent on the demurrer and the motion) shows that Raymond D. Williamson was the only attorney who appeared for defendant at the hearing of those proceedings. There was, so far as the record here discloses, no attempt to show that the act

of the defendant in retaining and employing Williamson as his attorney to represent him in the action was not prompted by good faith or not because defendant did not prefer him as such attorney over other attorneys. Our conclusion upon this branch of this discussion is that the record before us does not support the point here considered.

[4] 3. The remedy herein sought is proper. There is no appeal from an order granting or refusing to grant, or, as here, setting aside an order granting a continuance of the trial of a case. (Sec. 963, Code Civ. Proc.) Such an order would be reviewable on an appeal from the judgment, but the circumstances of this case obviously require a more speedy remedy than would thus be afforded. The case of *Chicago Public Stock Exchange* v. *McClaughry*, 148 Ill. 372 [36 N. E. 88]; does not hold otherwise. It merely holds that it was error to deny a motion for a continuance of the trial of a certain case, upon the showing made, on the ground that the appellant's attorney was, at the time the motion was made, a member of and in actual attendance upon a session of the legislature. So it was error for the court in this case to grant the motion to set aside its order continuing the trial of the action until after the legislature adjourned *sine die* and for thirty days thereafter; but it does not follow that such error is reviewable only by appeal. No jurisdictional writ was ever issued except upon some alleged error of an inferior tribunal exercising judicial functions. In the Illinois case named the main question was whether, in a suit to enjoin the defendant from committing acts of trespass upon the plaintiff's property, injunction would lie where the several acts of trespass were committed by the same person. The court held that for the trespasses committed the plaintiff had available to him an adequate remedy at law, in that the wrongs complained of were committed by one and the same person, that it was not, therefore, a question of a multiplicity of suits, and that the loss suffered by plaintiff in such case "would be susceptible of compensation in damages."

The Southern California Edison Company, alleging that it is "the real party in interest" in the action from which the present proceeding arises, submitted, at the hearing of the proceeding before this court, a motion to be allowed to intervene herein. The ground upon which the right

of intervention is based is that the petitioner herein, on applying for the writ of review issued herein, did not disclose to this court that the said action involved a special proceeding or was not the ordinary action at law or suit in equity. The assumption was and is that the provision of section 1054 of the Code of Civil Procedure regarding attorneys that are members of the legislature has no application to an action or proceeding in eminent domain, and that had this court been apprised or aware of the nature of the action this writ would not have been granted and issued. The conclusion at which we have arrived, as announced above, relative to the question of the applicability of said provision of section 1054 to a proceeding or action in eminent domain deprives the proposed intervention on the ground stated of all force, assuming, without deciding, that it would in any event have exercised controlling influence in the decision on this writ.

The motion of the Southern California Edison Company for permission to intervene herein is denied, and the order is annulled.

Finch, P. J., and Plummer, J., concurred.

A petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 5, 1927, on the sole ground that the question therein has become moot.